1   KILPATRICK TOWNSEND & STOCKTON LLP
    DENNIS WILSON ( Bar No. 155407 )
2   DWilson@kilpatricktownsend.com
    CAROLINE Y. BUSSIN (Bar No. 239343)
3   cbussin@kilpatricktownsend.com
    9720 Wilshire Blvd PH
4   Beverly Hills, CA  90212-2018
    Telephone:  310-248-3830
5   Facsimile:  310-860-0363

6   KILPATRICK TOWNSEND & STOCKTON LLP
    R. Charles Henn Jr. (Pro Hac Vice App. Pending)
7   CHenn@ Kilpatricktownsend.com
    Charles H. Hooker III (Pro Hac Vice App. Pending)
8   CHooker@ KilpatrickTownsend.com
    Nichole Davis Chollet (Pro Hac Vice App. Pending)
9   NChollet@ KilpatrickTownsend.com
    1100 Peachtree Street, Suite 2800
10  Atlanta, GA 30309-4530
    Telephone: (404) 815-6500
11  Facsimile: (404) 815-6555

12  Attorneys for Plaintiffs
    ADIDAS AG and ADIDAS AMERICA, INC.

13

14

15              UNITED STATES DISTRICT COURT

16          FOR THE CENTRAL DISTRICT OF CALIFORNIA

17  ADIDAS AG, a German corporation;    Case No. CV13-7567 CBM-CWx
    and ADIDAS AMERICA, INC., a
18  Delaware corporation,

19              Plaintiffs,               COMPLAINT FOR:
                                          1. FEDERAL TRADEMARK
20          v.                               INFRINGEMENT (15 U.S.C. §
                                             1114);
21  TOP LINK, INC., a California         2. FEDERAL UNFAIR
    corporation.                            COMPETITION;
22                                        3. UNFAIR AND DECEPTIVE
                Defendant.                   TRADE PRACTICES;
23                                        4. COMMON LAW TRADEMARK
                                             INFRINGEMENT AND UNFAIR
24                                           COMPETITION;
                                          5. FEDERAL TRADEMARK
25                                           DILUTION (15 U.S.C. § 1125); and
                                          6. STATE TRADEMARK DILUTION.
26
                                          **DEMAND FOR JURY TRIAL**
27

28

                          - 1 -
                                                    COMPLAINT

**BY FAX**

FILED
CLERK, U.S. DISTRICT COURT

OCT 1 1 2013

CENTRAL DISTRICT OF CALIFORNIA
DEPUTY


COPY

Plaintiffs adidas AG and adidas America, Inc. (collectively, "adidas" or "Plaintiffs") state the following for their Complaint against Defendant Top Link, Inc. ("Defendant").

## I.  INTRODUCTION

1.     For decades, adidas has manufactured, sold, and promoted footwear bearing its famous and distinctive Three-Stripe trademark (the "Three-Stripe Mark"). adidas owns numerous incontestable federal trademark registrations for its Three-Stripe Mark for footwear, and adidas has invested millions of dollars building its brand in connection with the Three-Stripe Mark.

2.     In addition, since 1969, adidas has offered and has spent hundreds of thousands of dollars promoting the famous SUPERSTAR™ model and its distinct and unique design, which features a combination of three-stripes on the side of the shoe, a rubber "shell toe," a particularly flat sole and a raised portion on the outer back heal section that identifies to consumers that the origin of the product lies with adidas (the "Superstar Trade Dress").

3.     Defendant is designing, sourcing, manufacturing, importing, distributing, marketing, promoting, offering for sale, and/or selling footwear that bears confusingly similar imitations of adidas's Three-Stripe Mark and Superstar Trade Dress, including the footwear depicted below and on the following page:

**Defendant's Footwear**

 



4.      Defendant's footwear is not manufactured by adidas, nor is Defendant connected or affiliated with, or authorized by adidas in any way.  Defendant's merchandise is likely to cause confusion, deceive the public regarding its source, and dilute and tarnish the distinctive quality of adidas's Three-Stripe Mark and Superstar Trade Dress.

5.      This is an action at law and in equity for trademark infringement and dilution, unfair competition, and unfair business practices, arising under the Trademark Act of 1946, 15 U.S.C. §§ 1051 *et seq.* (2009) ("Lanham Act"); the anti-dilution laws of several states; the unfair business practices and unfair and deceptive trade practices acts of several states; and the common law.  Among other relief, adidas asks this Court to: (a) permanently enjoin Defendant from marketing or selling

footwear bearing confusingly similar two-, three-, and four-stripe imitations of the Three-Stripe Mark or Superstar Trade Dress; (b) award adidas monetary damages and to treble that award; (c) require Defendant to disgorge all profits from sales of the infringing footwear; and (d) award adidas punitive damages, attorneys' fees, and costs.

## II. JURISDICTION AND VENUE

6.  This Court has subject matter jurisdiction pursuant to section 39 of the Lanham Act, 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331 and 1338.  Subject matter jurisdiction over adidas's related state and common law claims is proper pursuant to 28 U.S.C. §§ 1338 and 1367.

7.  This Court has personal jurisdiction over Defendant because, on information and belief, (a) Defendant is domiciled in California; (b) Defendant has imported, distributed, offered for sale, and/or sold, to persons within the State of California, (c) Defendant regularly transacts and conducts business within the State of California; or (d) otherwise made or established contacts within the State of California sufficient to permit the exercise of personal jurisdiction.

8.  This District is the proper venue pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this District.

## III.   THE PARTIES

9.  Plaintiff adidas AG is a joint stock company organized and existing under the laws of the Federal Republic of Germany, having its office and principal place of business at Postach 11230, D-91072 Herzogenaurach, Federal Republic of Germany.

10.  Plaintiff adidas America, Inc. is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business at 5055 North Greeley Avenue, Portland, Oregon 97217.  adidas America, Inc. directs all U.S.-based operations on behalf of adidas AG, including sales, brand marketing, product marketing, product design, public relations, distribution, enforcement, and

licensing of and for ADIDAS-branded merchandise, including goods bearing the distinctive Three-Stripe Mark and Superstar Trade Dress.  adidas AG and adidas America, Inc., as well as any predecessors or related entities, are collectively referred to as "adidas."

11.    On information and belief, Top Link, Inc. is incorporated in California and has a principal place of business at 10333 East Rush Street, South El Monte, California 91733.

### IV.    FACTS COMMON TO ALL CLAIMS FOR RELIEF

**A.    adidas's Famous Three-Stripe Mark**

12.    adidas is currently, and for years has been, one of the world's leading manufacturers of athletic footwear, sportswear, and sporting equipment.  Over sixty (60) years ago, adidas first placed three parallel stripes on its athletic shoes, and the Three-Stripe Mark came to signify the quality and reputation of adidas footwear to the sporting world early in the company's history.

13.    At least as early as 1952, adidas began using its Three-Stripe Mark on footwear sold in the United States and worldwide.  The Three-Stripe Mark quickly came to signify the quality and reputation of adidas footwear.  Examples of adidas footwear bearing the Three-Stripe Mark are depicted below and on the next page, and pages from adidas catalogs featuring additional examples of footwear bearing the Three-Stripe Mark are attached as **Exhibit 1.**

**Response Essence Shoe**          **Supernova Riot Shoe**

          

**SL 72 Shoes**



**Supernova Glide 5 Shoes**



**Superstar 2.0 Shoe**



**adiracer Shoes**



14.     adidas is the owner of a federal trademark registration, Reg. No. 1,815,956, issued by the United States Patent and Trademark Office ("PTO") on January 11, 1994, for the Three-Stripe Mark, as depicted below, for "athletic footwear."



Affidavits have been filed pursuant to Sections 8 and 15 of the Lanham Act, 15 U.S.C. §§ 1058 and 1065, and this registration is incontestable.  A copy of the Certificate of Registration for this mark is attached as **Exhibit 2.**

15.     adidas is the owner of a federal trademark registration, Reg. No. 1,833,868, issued by the PTO on May 3, 1994, for the Three-Stripe Mark, as depicted below, covering "athletic footwear."



COMPLAINT

Affidavits have been filed pursuant to Sections 8 and 15 of the Lanham Act, 15 U.S.C. §§ 1058 and 1065, and this registration is incontestable.  A copy of the Certificate of Registration for this mark is attached as **Exhibit 3.**

16.    adidas is the owner of a federal trademark registration, Reg. No. 2,278,589, issued by the PTO on September 21, 1999, for the Three-Stripe Mark, as depicted below, covering "athletic footwear."



Affidavits have been filed pursuant to Sections 8 and 15 of the Lanham Act, 15 U.S.C. §§ 1058 and 1065, and this registration is incontestable.  A copy of the Certificate of Registration for this mark is attached as **Exhibit 4.**

17.    adidas is the owner of a federal trademark registration, Reg. No. 3,029,129, issued by the PTO on December 13, 2005, for the Three-Stripe Mark, as depicted below, covering "footwear."



Affidavits have been filed pursuant to Sections 8 and 15 of the Lanham Act, 15 U.S.C. §§ 1058 and 1065, and this registration is incontestable.  A copy of the Certificate of Registration for this mark is attached as **Exhibit 5.**

18.    adidas is the owner of a federal trademark registration, Reg. No. 3,029,135, issued by the PTO on December 13, 2005, for the Three-Stripe Mark, as depicted below, covering "footwear."



COMPLAINT

Affidavits have been filed pursuant to Sections 8 and 15 of the Lanham Act, 15 U.S.C. §§ 1058 and 1065, and this registration is incontestable.  A copy of the Certificate of Registration for this mark is attached as **Exhibit 6.**

19.    adidas owns numerous additional trademark registrations, a number of which are incontestable, for the Three-Stripe Mark covering footwear and various items of apparel including U.S. Reg. Nos. 870,136, 961,353, 2,016,963, 2,058,619, 2,278,591, 2,284,308, 2,909,861, 2,999,646, 3,029,127, 3,063,742, 3,063,745, 3,087,329, 3,183,656, 3,183,663, and 3,236,505.  Copies of the Certificates of Registration for each of these marks are attached collectively as **Exhibit 7.**

20.    Additionally, adidas owns federal registrations for verbal trademarks using the term "3 stripes" including THE BRAND WITH THE 3 STRIPES, Reg. No. 1,674,229, for "sport and leisure wear."  Affidavits have been filed pursuant to Sections 8 and 15 of the Lanham Act, 15 U.S.C. §§ 1058 and 1065, and this registration is incontestable.  A copy of the Certificate of Registration for this mark is attached as **Exhibit 8.**

21.    adidas's Three-Stripe Mark is well-known and famous and has been for many years.  adidas has used the Three-Stripe Mark in connection with its frequent sponsorship of athletic tournaments and organizations, as well as professional athletes and collegiate sports teams.  For example, adidas has long-term relationships with University of Notre Dame, the University of California at Los Angeles, the University of Nebraska, the University of Louisville, the University of Michigan and the University of Tennessee.  Among many others, adidas sponsors: (a) 2012 NFL Offensive Rookie of the Year Robert Griffin III; (b) NBA stars Tim Duncan, Dwight Howard, Damian Lillard, and Derrick Rose; (c) baseball star Ryan Howard; (d) professional golfer Sergio Garcia; and (e) internationally famous soccer players David Beckham and Lionel Messi.  adidas also has been a long-term sponsor of the World Cup soccer tournament and the world-famous Boston Marathon.  Such prominent use of the Three-Stripe Mark in connection with widely viewed activities

COMPLAINT

and such well-known athletes has further enhanced the Three-Stripe Mark's recognition and fame.

22.     The Three-Stripe Mark is nonfunctional, and the public recognizes and understands that the Three-Stripe Mark distinguishes and identifies adidas's merchandise.  Indeed, unsolicited media coverage has referred to adidas's "trademark three-stripe sneakers" (Brettman, Allan, "Adidas lifts 2012 forecast as sales in China soar in Q1," *The Oregonian*, May 1, 2012), "the adidas stripes" (Brettman, Allan, "A $35 Swoosh of Genius," *The Oregonian*, June 16, 2011), adidas's "ubiquitous three stripes" (Brettman, Allan, "Going 'All In' Against Nike," *The Oregonian*, March 15, 2011), the "trademark three-stripe logo" (Pennington, Bill, "Belts That Do More Than Hold Up Pants," *New York Times*, July 27, 2009), the "iconic three stripes" ("Game Time," *Footwear News*, June 16, 2008), the "signature three stripes" (Moore, Booth, "Ringing Endorsements; Form Follows Function with Much Olympic Wear, but Fashion and Funding are also at Play," *L.A. Times*, August 13, 2004), the "famous brand with the three stripes" (Whiting, Sam, "Must Have," *San Francisco Chronicle*, July 7, 2002), and the "legendary Adidas three stripes" ("Coty Inc.," *Brand Strategy*, September 27, 1999).

23.     For decades, adidas extensively and continuously has used and promoted the Three-Stripe Mark in connection with footwear and apparel.  In recent years, annual sales of products bearing the Three-Stripe Mark have totaled in the billions of dollars globally and in the hundreds of millions of dollars within the United States.  The Three-Stripe Mark has achieved international fame and tremendous public recognition.

24.     Since introducing its Three-Stripe Mark, adidas has spent millions of dollars promoting the mark and products bearing the mark.  For example, in March 2011, adidas launched an advertising campaign in the United States "featuring Chicago Bulls guard Derrick Rose, rapper B.o.B and pop singer Katy Perry, among others," that "highlights [adidas's] imprint on the world of sports, music and

fashion," and "show[s] the breadth and depth of the Adidas brand."  A March 15, 2011 article from *The Oregonian* describing the advertising campaign is attached as **Exhibit 9.**  As a result of adidas's continuous and exclusive use of the Three-Stripe Mark in connection with its products, the mark enjoys wide public acceptance and association with adidas, and has come to be recognized widely and favorably by the public as an indicator of the origin of adidas's goods.

25.     As a result of adidas's extensive use and promotion of the Three-Stripe Mark, adidas has built up and now owns extremely valuable goodwill that is symbolized by the mark.  The purchasing public has come to associate the Three-Stripe Mark with adidas.

**B.     The Superstar Trade Dress**

26.     The SUPERSTAR™ model is a famous shoe featuring the distinctive Superstar Trade Dress, as depicted below:



27.     Since introducing its Superstar Trade Dress, adidas has spent hundreds of thousands of dollars promoting the product and its appearance.  As a result of adidas's continuous and exclusive use of the Superstar Trade Dress in connection with its products, the trade dress enjoys wide public acceptance and association with adidas, and has come to be recognized widely and favorably by the public as an indicator of the origin of adidas's goods.

28.     The fame and popularity of the Superstar Trade Dress, and particularly the "shell toe" feature, is evident from popular press reports, including the following:

- "adidas Originals is all in to celebrate the most stylish and iconic sneaker of all time – the SUPERSTAR.  It moved with legends on the basketball

COMPLAINT

court, represented the anthem for hip-hop and its most sought after street fashion shoe today." "The All Original SUPERSTAR Reppin' the Streets for 40 Years," <u>Web Newswire</u>, August 5, 2013

- "Users can also watch videos on the brand's history, including Adidas founder Adi Dassler and the trend-setting Superstar low-top basketball shoe, as well as trace the brand's involvement in the Olympics." "Adidas Launches Interactive Archive Site," <u>AFP – RelaxNews</u>, March 15, 2013.

- "Combining the cultural expertise of both brands, consumers will not only see the iconic adidas Superstar shoes in Need for Speed the Run, but they'll also be treated with exclusive and limited edition Need for Speed the Run adidas branded apparel which will be available at all adidas Original stores across the United States." "Multimedia and Graphic Software Companies; EA and adidas Originals Unite to Bring Need for Speed the Run to Consumers this Fall," <u>Marketing Business Weekly</u>, October 30, 2011.

- But the popularity of the Superstar – whether in the classic black-on-white colorway or the many variations since – has held steady even as hip-hop's look and sound have evolved." Jennifer Ernst Beaurdy, " 25 Classic Kicks," <u>Footwear News</u>, October 19, 2009.

- "Among the more contemporary specimens featured in [the Museum of Fine Art's Walk This Way exhibit] are a pair of Sex and the City-esque Manolo Blahnik Marry Janes and the Adidas shell-toe Superstars made famous by Run-DMC." <u>Boston Magazine</u>, September 2007.

- "Where do celebrities turn when they need some appropriately named sports shoes?  Reach for Adidas's legendary Superstars, better known as Shelltoes." "We're Stars in Stripes," <u>Mail on Sunday</u>, April 15, 2007, at 6.

COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- "Adidas released 30 NBA Superstar shoes -- one for each team in the NBA -- in December.  Shoes flew off the shelves."  Sarah Skidmore, "Obsession Picks Up Speed as Shoe Industry Caters to Fans of 'Kicks.'" Daily Breeze, January 19, 2007, at C1.

- "With its trademark shell-toe design, the Adidas Superstar is one of the most recognizable basketball shoes ever made."  Fred Bierman and Benjamin Hoffman, "Off the Dribble," The New York Times, January 7, 2007, at 2.

- "Shell toes refer to Adidas's iconic Superstars, with their distinctive toe caps and triple-striped sides and 35-year history of rocking the sneaker world."  Paula Brook and Sue Vancouver, "Sneaker Freaks: Collectors of a Cultural Icon," Ottawa Citizen, February 19, 2005, at 17.

- "P. Diddy, Missy Elliot, Damon Dash, and the Red Hot Chili Peppers are among the artists and celebrities who designed special edition Adidas sneakers as part of a 35th anniversary celebration for the company's classic Superstar style.  The iconic sneaker, introduced in 1970, began as a white leather shell-toe shoe with three black stripes and was initially intended for basketball.  The style has evolved and been co-opted for everyone from skateboarders and hip-hoppers to fashionistas, and has legions of fans worldwide."  "Fashion Scoops: Sneakerhead, Get Ready."  Women's World Daily, February 11, 2005.

- "Soon enough, he became the rapper sneaker delivery source.  'If you're a rapper and you needed a pair of Adidas shell toes for your album-release party at 11 o'clock, call me,' he said.  'I'll bring them to you.  Even if it was for one pair, I'd go, because I knew they wouldn't forget me.'"  Carl Swanson, "Want Something Basic?  Do Not See This Guy," New York Times, April 4, 2004.

/ / /

COMPLAINT

- "Adidas.  The super cool brand has its foot wedged in pop culture.  That athletic label is a staple among trendsetters (the shell-toes were most famously worn by Run DMC)."  Audra D.S. Burch, "Shop Till You Drop: South Beach Once Again Becomes the Place for Fashionistas," <u>Miami Herald</u>, January 21, 2004.

- "When it comes to icons, the Adidas SUPERSTAR lives up to its name.  Famous for its rubberised shell toe, the streamlined trainer will forever be linked to the legendary 70s basketball player Abdul Jabar."  Lara Zamiatin, <u>Sun Herald</u>, June 13, 2004.

- "New York's biggest trendsetters are going public with their locker room gear this summer . . . .  Annemie Dreves - a.k.a. 'Number 56' - pairs this football-style jersey with well-worn jeans slit at the ankles and shell-toe Adidas."  Danielle Levitt & Libby Callaway, "Gym Dandies," <u>The New York Post</u>, September 2, 2001.

- "One such shoe is the Adidas SUPERSTAR, with its now famous rubber shell toe.  Introduced in 1969 as a basketball shoe, it was worn by three-quarters of National Basketball Association players by the mid '70s but fell in popularity in the '80s, when chunky Nikes and Reeboks dominated.  Championed by rappers Run DMC, who wrote My Adidas in 1986, and later the Beastie Boys, they became a cult fashion item, prompting Adidas to re-release old models."  Dominique Jackson, "Sneaky Feelings," <u>The Australian</u>, August 17, 2001.

- "This season she's wearing frayed and faded Earl Jeans, Adidas shell toes and an asymmetric top."  <u>PR Week</u>, July 13, 2001, at 11.

- "dido . . . In her urban chic attire, she is an English rose with a thorny edge . . . .  For casual days, she gravitates toward Adidas shell-toe sneakers, T-shirts with iron on decals, and Katayone Adeli or Diesel pants."  Heidi Sherman, "Amped + Vamped: Sample the Style High

COMPLAINT

Notes of Destiny's Child, Sheryl Crow, Macy Gray and More," In Style, July 2001, at 186.

- "But when Michelle Corbett stopped in during her lunch hour to buy a pair of popular Adidas called Superstars (some call them shell toes), she was told that particular pair was not on sale." Bruce Mohl, "Old-Fashioned Bill-Paying Gets New Wrinkle," The Boston Globe, May 13, 2001, at C3.

29.   As a result of adidas's extensive use and promotion of its Superstar Trade Dress, adidas has built up and owns valuable goodwill that is symbolized by the trade dress.  The purchasing public has come to associate the Superstar Trade Dress with adidas.  adidas's Superstar Trade Dress is distinctive and non-functional and has achieved significant secondary meaning.  Indeed, in 2008 a jury found the Superstar Trade Dress to be valid and famous.

### V. DEFENDANT'S UNLAWFUL ACTIVITIES

30.   In blatant disregard of adidas's rights, Defendant is designing, manufacturing, sourcing, importing, distributing, marketing, promoting, offering for sale, and/or selling footwear in interstate commerce bearing confusingly similar imitations of adidas's Three-Stripe Mark and Superstar Trade Dress (collectively, the "Infringing Footwear").  Representative examples of Defendant's Infringing Footwear are depicted on the following page:

### Defendant's Infringing Footwear

 

COMPLAINT








31.     In many instances, Defendant's Infringing Footwear are virtually identical replicas of adidas footwear as shown in the examples below and on the following page:

**<u>Defendant's Infringing Footwear</u>**          **<u>Authentic adidas Footwear</u>**




COMPLAINT



32.     On information and belief, Defendant was familiar with adidas's Three-Stripe Mark and Superstar Trade Dress when it began designing, manufacturing, sourcing, importing, distributing, marketing, promoting, offering for sale, and/or selling the Infringing Footwear identified in this Complaint.  On further information and belief, Defendant intentionally adopted and used confusingly similar imitations of the Three-Stripe Mark and Superstar Trade Dress knowing that they would mislead and deceive consumers into believing that the footwear was produced, authorized, or licensed by adidas, or that the footwear originated from adidas.

33.     The Infringing Footwear designed, manufactured, sourced, imported, distributed, marketed, promoted, offered for sale, and/or sold by Defendant is not manufactured by adidas.  Nor is Defendant associated or connected with adidas, or licensed, authorized, sponsored, endorsed, or approved by adidas in any way.

34.     adidas used the Three-Stripe Mark and Superstar Trade Dress extensively and continuously before Defendant began designing, manufacturing, sourcing, importing, distributing, marketing, promoting, offering for sale, and/or selling confusingly similar imitations of adidas's footwear.

35.     The footwear sold by Defendant is similar to, and competes with, goods sold by adidas, and the parties' products are sold through overlapping channels of trade.

36.     Defendant's use of confusingly similar imitations of adidas's Three-Stripe Mark is likely to deceive, confuse, and mislead purchasers and prospective purchasers into believing that the footwear sold by Defendant is manufactured by,

authorized by, or in some manner associated with adidas, which it is not.  The likelihood of confusion, mistake, and deception engendered by Defendant's misappropriation of adidas's mark is causing irreparable harm to the goodwill symbolized by the Three-Stripe Mark and the reputation for quality that it embodies.

37.   Defendant's activities are likely to cause confusion before, during, and after the time of purchase because purchasers, prospective purchasers, and others viewing Defendant's Infringing Footwear at the point of sale or on a wearer are likely – due to Defendant's use of confusingly similar imitations of the Three-Stripe Mark and Superstar Trade Dress – to mistakenly attribute the product to adidas.  This is particularly damaging with respect to those people who perceive a defect or lack of quality in Defendant's products.  By causing a likelihood of confusion, mistake, and deception, Defendant is inflicting irreparable harm on the goodwill symbolized by the Three-Stripe Mark and Superstar Trade Dress and the reputation for quality that they embody.

38.   On information and belief, Defendant continues to use confusingly similar imitations of the Three-Stripe Mark and Superstar Trade Dress in connection with the sale of footwear that competes with the footwear manufactured and sold by adidas.  Defendant began selling the Infringing Footwear well after adidas had established protectable rights in its Three-Stripe Mark and Superstar Trade Dress and well after the Three-Stripe Mark and Superstar Trade Dress had become famous.

39.   On further information and belief, Defendant knowingly, willfully, intentionally, and maliciously adopted and used substantially indistinguishable and confusingly similar imitations of adidas's Three-Stripe Mark and Superstar Trade Dress.

## FIRST CLAIM FOR RELIEF
### (Federal Trademark Infringement of the Three-Stripe Mark)

40.   adidas repeats and incorporates by reference the allegations in the preceding paragraphs.

COMPLAINT

41.   Defendant's use of confusingly similar imitations of adidas's Three-Stripe Mark is likely to cause confusion, deception, and mistake by creating the false and misleading impression that adidas's products are manufactured, produced, distributed, endorsed, sponsored, approved, or licensed by adidas, or are associated or connected with adidas.

42.   Defendant has used marks confusingly similar to adidas's federally registered Three-Stripe Mark in violation of 15 U.S.C. § 1114.  Defendant's activities have caused, and unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public, and additionally, injury to adidas's goodwill and reputation as symbolized by the registered Three-Stripe Mark, for which adidas has no adequate remedy at law.

43.   Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with adidas's federally registered Three-Stripe Mark to adidas's great and irreparable injury.

44.   Defendant has caused and is likely to continue causing substantial injury to the public and to adidas, and adidas is entitled to injunctive relief and to recover Defendant's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117.

## SECOND CLAIM FOR RELIEF
### (Federal Unfair Competition as to the Three-Stripe Mark)

45.   adidas repeats and incorporates by reference the allegations in the preceding paragraphs.

46.   Defendant's use of confusingly similar imitations of adidas's Three-Stripe Mark has caused and is likely to continue causing confusion, deception, and mistake by creating the false and misleading impression that Defendant's goods are manufactured or distributed by adidas, are affiliated, connected, or associated with adidas, or have the sponsorship, endorsement, or approval of adidas.

/ / /

47.     Defendant has made false representations, false descriptions, and false designations of its goods in violation of 15 U.S.C. § 1125(a).  Defendant's activities have caused, and unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public, as well as injury to adidas's goodwill and reputation as symbolized by the Three-Stripe Mark, for which adidas has no adequate remedy at law.

48.     Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with adidas's Three-Stripe Mark to the great and irreparable injury of adidas.

49.     Defendant's conduct has caused, and is likely to continue causing, substantial injury to the public and to adidas.  adidas is entitled to injunctive relief and to recover Defendant's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1125(a), 1116, and 1117.

### THIRD CLAIM FOR RELIEF
### (Federal Unfair Competition as to the Superstar Trade Dress)

50.     adidas repeats and incorporates by reference the allegations in the preceding paragraphs.

51.     adidas's Superstar Trade Dress has acquired secondary meaning.

52.     Defendant's use of confusingly similar imitations of adidas's Superstar Trade Dress has caused and is likely to continue causing confusion, deception, and mistake by creating the false and misleading impression that Defendant's goods are manufactured or distributed by adidas, are affiliated, connected, or associated with adidas, or have the sponsorship, endorsement, or approval of adidas.

53.     Defendant has made false representations, false descriptions, and false designations of its goods in violation of 15 U.S.C. § 1125(a).  Defendant's activities have caused, and unless enjoined by this Court, will continue to cause a likelihood of confusion and deception of members of the trade and public, as well as injury to adidas's goodwill and reputation as symbolized by the Superstar Trade Dress, for

1    which adidas has no adequate remedy at law.

2        54.    Defendant's actions demonstrate an intentional, willful, and malicious

3    intent to trade on the goodwill associated with adidas's Superstar Trade Dress to the

4    great and irreparable injury of adidas.

5        55.    Defendant's conduct has caused, and is likely to continue causing,

6    substantial injury to the public and to adidas.  adidas is entitled to injunctive relief

7    and to recover Defendant's profits, actual damages, enhanced profits and damages,

8    costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1125(a), 1116, and 1117.

9    **FOURTH CLAIM FOR RELIEF**

10   **(Unfair and Deceptive Trade Practices as to the Three-Stripe Mark)**

11       56.    adidas repeats and incorporates by reference the allegations in the

12   preceding paragraphs.

13       57.    Defendant has been and is passing off its goods as those of adidas,

14   causing a likelihood of confusion or misunderstanding as to the source, sponsorship,

15   or approval of Defendant's goods, causing a likelihood of confusion as to

16   Defendant's affiliation, connection, or association with adidas, and otherwise

17   damaging adidas and the consuming public.  Defendant's conduct constitutes unfair

18   and deceptive acts or practices in the course of a business, trade, or commerce in

19   violation of the unfair and deceptive trade practices statutes of several states,

20   including California, CAL. BUS. & PROF. CODE § 17200, *et seq.* (West 2009);

21   Colorado, COLO. REV. STAT. ANN. §§ 6-1-101 to 6-1-115 (West 2009); Delaware,

22   DEL. CODE ANN. tit. 6, §§ 2531 to 2536 (2009); Georgia, GA. CODE ANN. §§ 10-

23   1-370 to 10-1-375 (2009); Hawaii, HAW. REV. STAT. §§ 481A-1 to 481A-5 (2009);

24   Illinois, ILL. COMP. STAT. ANN. ch. 815, 510/1 to 510/7 (2009); Maine, ME. REV.

25   STAT. ANN. tit. 10, §§ 1211 to 1216 (West 2009); Minnesota, MINN. STAT. ANN.

26   § 325D.43 to .48 (West 2009); Nebraska, NEB. REV. STAT. §§ 87-301 to 87-306

27   (2009); New Mexico, N.M. STAT. ANN. §§ 57-12-1 to 57-12-22 (Michie 2009);

28   New York, N.Y. GEN. BUS. Law § 349 (McKinney 2009); Ohio, OHIO REV.

CODE ANN. §§ 4165.01 to 4165.04 (Baldwin 2009); and Oklahoma, OKLA. STAT. ANN. tit. 78, §§ 51 to 55 (West 2009).

58.     Defendant's unauthorized use of confusingly similar imitations of adidas's Three-Stripe Mark has caused and is likely to cause substantial injury to the public and to adidas.  adidas therefore is entitled to injunctive relief and to recover damages and, if appropriate, punitive damages, costs, and reasonable attorneys' fees.

## FIFTH CLAIM FOR RELIEF
### (Unfair and Deceptive Trade Practices as to the Superstar Trade Dress)

59.     adidas repeats and incorporates by reference the allegations in the preceding paragraphs.

60.     Defendant has been and is passing off its goods as those of adidas, causing a likelihood of confusion or misunderstanding as to the source, sponsorship, or approval of Defendant's goods, causing a likelihood of confusion as to Defendant's affiliation, connection, or association with adidas, and otherwise damaging adidas and the consuming public.  Defendant's conduct constitutes unfair and deceptive acts or practices in the course of a business, trade, or commerce in violation of the unfair and deceptive trade practices statutes of several states, including California, CAL. BUS. & PROF. CODE § 17200, *et seq.* (West 2009); Colorado, COLO. REV. STAT. ANN. §§ 6-1-101 to 6-1-115 (West 2009); Delaware, DEL. CODE ANN. tit. 6, §§ 2531 to 2536 (2009); Georgia, GA. CODE ANN. §§ 10-1-370 to 10-1-375 (2009); Hawaii, HAW. REV. STAT. §§ 481A-1 to 481A-5 (2009); Illinois, ILL. COMP. STAT. ANN. ch. 815, 510/1 to 510/7 (2009); Maine, ME. REV. STAT. ANN. tit. 10, §§ 1211 to 1216 (West 2009); Minnesota, MINN. STAT. ANN. § 325D.43 to .48 (West 2009); Nebraska, NEB. REV. STAT. §§ 87-301 to 87-306 (2009); New Mexico, N.M. STAT. ANN. §§ 57-12-1 to 57-12-22 (Michie 2009); New York, N.Y. GEN. BUS. Law § 349 (McKinney 2009); Ohio, OHIO REV. CODE ANN. §§ 4165.01 to 4165.04 (Baldwin 2009); and Oklahoma, OKLA. STAT. ANN. tit. 78, §§ 51 to 55 (West 2009).

1    61.   Defendant's unauthorized use of a confusingly similar imitation of

2  adidas's Superstar Trade Dress has caused and is likely to cause substantial injury to

3  the public and to adidas.  adidas therefore is entitled to injunctive relief and to recover

4  damages and, if appropriate, punitive damages, costs, and reasonable attorneys' fees.

5                              **SIXTH CLAIM FOR RELIEF**

6    **(Common Law Trademark Infringement and Unfair Competition as to the**

7                                   **Three-Stripe Mark)**

8    62.   adidas repeats and incorporates by reference the allegations in the

9  preceding paragraphs.

10    63.   Defendant's acts constitute common law trademark infringement and

11  unfair competition, and have created and will continue to create, unless restrained by

12  this Court, a likelihood of confusion to the irreparable injury of adidas.  adidas has no

13  adequate remedy at law for this injury.

14    64.   On information and belief, Defendant acted with full knowledge of

15  adidas's use of, and statutory and common law rights to, the Three-Stripe Mark and

16  without regard to the likelihood of confusion of the public created by Defendant's

17  activities.

18    65.   Defendant's actions demonstrate an intentional, willful, and malicious

19  intent to trade on the goodwill associated with adidas's Three-Stripe Mark to the

20  great and irreparable injury of adidas.

21    66.   As a result of Defendant's acts, adidas has been damaged in an amount

22  not yet determined or ascertainable.  At a minimum, however, adidas is entitled to

23  injunctive relief, an accounting of Defendant's profits, damages, and costs.  Further,

24  in light of the deliberately fraudulent and malicious use of confusingly similar

25  imitations of adidas's Three-Stripe Mark, and the need to deter Defendant from

26  engaging in similar conduct in the future, adidas additionally is entitled to punitive

27  damages.

28  / / /

## SEVENTH CLAIM FOR RELIEF
### (Common Law Trademark Infringement and Unfair Competition as to the Superstar Trade Dress)

67.    adidas repeats and incorporates by reference the allegations in the preceding paragraphs.

68.    Defendant's acts constitute common law trademark infringement and unfair competition, and have created and will continue to create, unless restrained by this Court, a likelihood of confusion to the irreparable injury of adidas.  adidas has no adequate remedy at law for this injury.

69.    On information and belief, Defendant acted with full knowledge of adidas's use of, and statutory and common law rights to, the Superstar Trade Dress and without regard to the likelihood of confusion of the public created by Defendant's activities.

70.    Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with adidas's Superstar Trade Dress to the great and irreparable injury of adidas.

71.    As a result of Defendant's acts, adidas has been damaged in an amount not yet determined or ascertainable.  At a minimum, however, adidas is entitled to injunctive relief, an accounting of Defendant's profits, damages, and costs.  Further, in light of the deliberately fraudulent and malicious use of a confusingly similar imitation of adidas's Superstar Trade Dress, and the need to deter Defendant from engaging in similar conduct in the future, adidas additionally is entitled to punitive damages.

## EIGHTH CLAIM FOR RELIEF
### (Federal Trademark Dilution as to the Three-Stripe Mark)

72.    adidas repeats and incorporates by reference the allegations in the preceding paragraphs.

73.    For decades, adidas has exclusively and continuously promoted and used the registered Three-Stripe Mark both in the United States and throughout the world.

COMPLAINT

1   The mark has thus become a famous and well-known symbol of adidas and its

2   products well before Defendant designed, sourced, manufactured, imported,

3   distributed, marketed, promoted, offered for sale, and/or sold the footwear identified

4   in this Complaint.

5        74.    Defendant is making use in commerce of marks that dilute and are likely

6   to dilute the distinctiveness of adidas's Three-Stripe Mark by eroding the public's

7   exclusive identification of the famous Three-Stripe Mark with adidas, tarnishing and

8   degrading the positive associations and prestigious connotations of the Three-Stripe

9   Mark, and otherwise lessening the capacity of the Three-Stripe Mark to identify and

10   distinguish adidas's goods.

11        75.    Defendant's actions demonstrate an intentional, willful, and malicious

12   intent to trade on the goodwill associated with adidas's Three-Stripe Mark or to cause

13   dilution of the Three-Stripe Mark to the great and irreparable injury of adidas.

14        76.    Defendant has caused and will continue to cause irreparable injury to

15   adidas's goodwill and business reputation, and dilution of the distinctiveness and

16   value of adidas's famous and distinctive Three-Stripe Mark in violation of 15 U.S.C.

17   § 1125(c).  adidas therefore is entitled to injunctive relief and to Defendant's profits,

18   actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees

19   under 15 U.S.C. §§ 1125(c), 1116, and 1117.

20                                **NINTH CLAIM FOR RELIEF**

21         **(Federal Trademark Dilution as to the Superstar Trade Dress)**

22        77.    adidas repeats and incorporates by reference the allegations in the

23   preceding paragraphs.

24        78.    adidas has extensively and continuously promoted and used the

25   Superstar Trade Dress both in the United States and throughout the world.  The

26   Superstar Trade Dress had thereby become a famous and well-known symbol of

27   adidas's goods and services well before Defendant offered for sale the footwear

28   identified of in this Complaint.

                 COMPLAINT

79.     Defendant is making commercial use in commerce of a trade dress that diluites and is likely to dilute the distinctiveness of adidas's Superstar Trade Dress by eroding the public's exclusive identification of this famous trade dress with adidas, tarnishing and degrading the positive associations and prestigious connotations of the trade dress, and otherwise lessening the capacity of the trade dress to identify and distinguish adidas's goods and services.

80.     Defendant's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with adidas's Superstar Trade Dress or to cause dilution of the Superstar Trade Dress to the great and irreparable injury of adidas.

81.     Defendant has caused and will continue to cause irreparable injury to adidas's goodwill and business reputation, and dilution of the distinctiveness and value of adidas's famous and distinctive Superstar Trade Dress in violation of 15 U.S.C. § 1125(c).  adidas therefore is entitled to injunctive relief and to Defendant's profits, actual damages, enhanced profits and damages, and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1125(c), 1116 and 1117.

### TENTH CLAIM FOR RELIEF
### (State Trademark Dilution as to the Three-Stripe Mark)

82.     adidas repeats and incorporates by reference the allegations in the preceding paragraphs.

83.     adidas has extensively and continuously promoted and used the registered Three-Stripe Mark both in the United States and throughout the world, and the mark has thereby become a distinctive, famous, and well-known symbol of adidas's goods and services well before Defendant designed, sourced, manufactured, imported, distributed, marketed, promoted, offered for sale, and/or sold the footwear identified in this Complaint.  The Three-Stripe Mark is widely recognized by the general consuming public of the State of California as a designation that adidas is the source of the goods bearing the Three-Stripe Mark.

COMPLAINT

84.   Defendant's unauthorized imitations of adidas's Three-Stripe Mark dilute and are likely to dilute the distinctiveness of adidas's mark by eroding the public's exclusive identification of this famous and well-known mark with adidas, and tarnishing and degrading the positive associations and prestigious connotations of the mark, and otherwise lessening the capacity of the mark to identify and distinguish adidas's goods and services.

85.   Defendant is causing and will continue to cause irreparable injury to adidas's goodwill and business reputation, and dilution of the distinctiveness and value of adidas's famous Three-Stripe Mark in violation of the California anti-dilution statute, CAL. BUS. & PROF. CODE § 14247 (West 2009), as well as the antidilution laws of the several states, including Alabama, ALA. CODE § 8-12-17 (2009); Alaska, ALASKA STAT. §45.50.180 (Michie 2009); Arizona, ARIZ. REV. STAT. ANN. §44-1448.01 (West 2009); Arkansas, ARK. CODE ANN. § 4-71-213 (2009); Connecticut, CONN. GEN. STAT. ANN § 35-11i(c) (West 2009); Delaware, DEL. CODE ANN. tit. 6, § 3313 (2009); Florida, FLA. STAT. ANN. § 495.151 (West 2007); Georgia, GA. CODE ANN. § 10-1-451 (2009); Hawaii, HAW. REV. STAT. ANN. § 482-32 (Michie 2009); Idaho, IDAHO CODE § 48-513 (Michie 2009); Illinois, 765 ILL. COMP. STAT. ANN. 1036/65 (2009); Iowa, IOWA CODE ANN. § 548.113 (West 2009); Indiana, IN. CODE 24-2-13.5 (West 2009); Kansas, KAN. STAT. ANN. § 81-214 (2009); Louisiana, LA. REV. STAT. ANN. § 51:223.1 (West 2009); Maine, ME. REV. STAT. ANN. tit. 10, § 1530 (West 2000); Massachusetts, MASS. GEN. LAWS. ANN. ch. 110H, § 13 (West 2009); Minnesota, MINN. STAT. ANN. § 333.285 (West 2009); Mississippi, MISS. CODE. ANN. § 75-25-25 (2009); Missouri, MO. ANN. STAT. § 417.061(1) (West 2009); Montana, MONT. CODE ANN. § 30-13-334 (2009); Nebraska, NEB. REV. STAT. ANN. §87-140 (Michie 2009); Nevada, NEV. REV. STAT. 600.435 (2007); New Hampshire, N.H. REV. STAT. ANN. § 350-A:12 (2009); New Jersey, N.J. STAT. ANN. 56:3-13.20 (West 2009); New Mexico, N.M. STAT. ANN. § 57-3B-15 (Michie 2009);

New York, N.Y. GEN. BUS. Law § 360-l (2009); Oregon, O.R.S. § 647.107 (2009); Pennsylvania, 54 PA. CONS. STAT. ANN. § 1124 (West 2009); Rhode Island, R.I. GEN. LAWS § 6-2-12 (2009); South Carolina, S. C. CODE ANN. § 39-15-1165 (2009) Tennessee, TENN. CODE ANN. § 47-25-513 (2009); Texas, TEX. BUS. & COM. CODE ANN. § 16.29 (Vernon 2009); Utah, UT. CODE ANN. §70-3a-403 (2009); Washington, WASH. REV. CODE ANN. § 19.77.160 (West 2009); West Virginia, W.V. STAT. ANN. 47-2-13 (Michie 2009); and Wyoming, WYO. STAT. ANN. § 40-1-115 (Michie 2009).  adidas therefore is entitled to injunctive relief, damages, and costs, as well as, if appropriate, enhanced damages and reasonable attorneys' fees.

**PRAYER FOR RELIEF**

WHEREFORE, adidas prays that:

1.      Defendant and all of its agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or under the authority from Defendant, or in concert or participation with Defendant, and each of them, be enjoined permanently from:

> a.      using adidas's Three-Stripe Mark, the Superstar Trade Dress, or any other copy, reproduction, colorable imitation, or simulation of adidas's Three-Stripe Mark or Superstar Trade Dress on or in connection with Defendant's products;
>
> b.      using any trademark, trade dress, service mark, name, logo, design or source designation of any kind on or in connection with Defendant's goods or services that is a copy, reproduction, colorable imitation, or simulation of, or confusingly similar to, the trademarks, trade dresses, service marks, names or logos of adidas;
>
> c.      using any trademark, trade dress, service mark, name, logo, design or source designation of any kind on or in connection with

1    Defendant's goods or services that is likely to cause confusion,

2    mistake, deception, or public misunderstanding that such goods or

3    services are produced or provided by adidas, or are sponsored or

4    authorized by adidas or are in any way connected or related to

5    adidas;

6    d.    using any trademark, trade dress, service mark, name, logo,

7    design or source designation of any kind on or in connection with

8    Defendant's goods or services that dilutes or is likely to dilute the

9    distinctiveness of the trademarks, trade dresses, service marks,

10    names, or logos of adidas; and

11    e.    passing off, palming off, or assisting in passing off or

12    palming off Defendant's goods or services as those of adidas, or

13    otherwise continuing any and all acts of unfair competition as

14    alleged in this Complaint;

15    2.    Defendant be ordered to recall all products bearing the Three-Stripe

16    Mark, the Superstar Trade Dress or any other confusingly similar variation thereof,

17    which have been shipped by Defendant or under its authority, to any customer,

18    including but not limited to, any wholesaler, distributor, retailer, consignor, or

19    marketer, and also to deliver to each customer a copy of this Court's order as it

20    relates to said injunctive relief against Defendant;

21    3.    Defendant be ordered to deliver up for impoundment and for destruction,

22    all footwear, bags, boxes, labels, tags, signs, packages, receptacles, advertising,

23    sample books, promotional materials, stationary, or other materials in the possession,

24    custody or under the control of Defendant that are found to adopt, infringe, or dilute

25    any of adidas's trademarks, trade dresses, or that otherwise unfairly compete with

26    adidas and its products and services;

27    / / /

28    / / /

4.      Defendant be compelled to account to adidas for any and all profits derived by Defendant from the sale or distribution of infringing goods as described in this Complaint;

5.      adidas be awarded all damages caused by acts forming the basis of this Complaint;

6.      Based on Defendant's knowing and intentional use of confusingly similar imitations of adidas's Three-Stripe Mark and Superstar Trade Dress, the damages awarded be trebled and the award of Defendant's profits be enhanced as provided for by 15 U.S.C. § 1117(a);

7.      Defendant be required to pay to adidas the costs and reasonable attorneys' fees incurred by adidas in this action pursuant to 15 U.S.C. § 1117(a) and the state statutes cited in this Complaint;

8.      Based on Defendant's willful and deliberate infringement and/or dilution of adidas's mark, and to deter such conduct in the future, adidas be awarded punitive damages;

9.      Defendant be required to pay prejudgment and post-judgment interest on the damages and profits awards; and

10.     adidas have such other and further relief as the Court may deem just.

## JURY TRIAL DEMAND

Plaintiffs respectfully demand a trial by jury on all claims and issues so triable.

DATED:  October 11, 2013          Respectfully submitted,

KILPATRICK TOWNSEND & STOCKTON LLP

By:  _____
        CAROLINE Y. BUSSIN

Attorneys for Plaintiff
ADIDAS AG and ADIDAS AMERICA, INC.